**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**DONALD RAYMOND BARBE,**

       **Petitioner,**

**v.**                                   **Civil Action No. 2:07cv25**
                                         **(Judge Maxwell)**

**THOMAS MCBRIDE, Warden,**

       **Respondent.**

## REPORT AND RECOMMENDATION

### I.  Procedural History

On March 19, 2007, the petitioner initiated this action by filing a *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. [Doc. 1]  On March 23, 2007, the undersigned conducted a preliminary review of the file and issued a Report and Recommendation ("R&R") recommending that the petition be dismissed as successive. [Doc. 4]  The petitioner filed objections on March 28, 2007. [Doc. 5]

On May 27, 2008, counsel entered an appearance on behalf of the petitioner. [Doc. 6]  On that same date, counsel filed a Motion and Supporting Memorandum of Donald R. Barbe for Resolution of Objections. [Doc. 7]  Over the petitioner's objections, the R&R was adopted and the petition denied on May 29, 2008. [Doc. 11]

The petitioner filed a Notice of Appeal on June 25, 2008. [Doc. 14]  On June 22, 2009, the Fourth Circuit Court of Appeals vacated the Order dismissing the petitioner's habeas petition as successive and remanded the case to this court for further proceedings. [Doc. 20]

On December 22, 2009, the case was referred to the undersigned pursuant to 28 U.S.C. § 636 and LR PL P 83.13, <u>et seq</u>. [Doc. 25]  On December 29, 2009, the undersigned directed the

respondent to show cause why the petition should not be granted. [Doc. 26]  The respondent filed a Response and a Motion for Partial Summary Judgment [Doc. 29] and a Memorandum in Support [Doc. 30] on January 27, 2010.  The petitioner filed a response on February 26, 2010. [Doc. 36]

On March 26, 2010, the undersigned conducted a review of the respondent's Motion for Partial Summary Judgment and the petitioner's response thereto. [Doc. 38] The undersigned determined that the petition raises two grounds for relief related to counts 10 and 11 of the petitioner's state court indictment: (1) he was improperly sentenced under an *ex post facto* law; and (2) his due process rights were violated when the state court impermissibly broadened the charged offense.  Id.  at 1.  With respect to ground two, the undersigned directed the respondent to file a supplemental response.  Id. at 3.

On April 16, 2010, the respondent filed a Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment. [Doc. 39]  With permission of the Court, the petitioner filed a response in opposition on June 7, 2010. [Doc. 42]  Accordingly, this case is ripe for review.

## II.   Petitioner's Conviction and Sentence

On September 13, 1999, a grand jury sitting in Ohio County, West Virginia, returned a 17-count indictment against the petitioner for three counts charging Sexual Assault in the First Degree (Counts 1-3); three counts charging Incest (counts 4-6); three counts charging Sexual Abuse by a Custodian (Counts 7-9); six counts charging Sexual Abuse in the First Degree (Counts 10-15); and two counts charging Sexual Assault in the Second Degree (Counts 10-15).  See Barbe v. McBride, 5:04cv53 (N.D.W.Va. July 8, 2008); see also [Doc. 7] at Pet's Ex. G.  In counts 1-9, the petitioner was charged with committing various sex crimes against J.M., a minor.  Pet's Ex. G.  In counts 10 and 11, the petitioner was charged with committing Sexual Abuse in the First Degree against B.H., a minor.  Id.  In counts 12-17, the petitioner was charged with committing various sex crimes against

S.S., a minor.  Id.

In December of 1999, a jury found the petitioner guilty of two counts Sexual Assault in the First Degree (Counts 2 and 3); two counts of Incest (Counts 5 and 6); two counts of Sexual Abuse by a Custodian (Counts 8 and 9); and two counts of Sexual Assault in the Second Degree (Counts 10 and 11).  See Barbe v. McBride, 5:04cv53 at Resp't Ex. 2.  The petitioner was acquitted of counts 1, 4, 7 and 12-17.  Id.  On February 1, 2000, the petitioner received a total aggregate sentence of not less than 80, nor more than 190 years in the West Virginia Penitentiary.[1]  The petitioner's appeal was denied. [Doc. 7] at Pet's Ex. E.

On February 26, 2001, the petitioner filed his first State habeas petition.  Id. at Pet's Ex. F.  That petition was denied on August 3, 2001.  Id. at Pet's Ex. G.  Nonetheless, after the West Virginia Supreme Court of Appeals ordered that counsel be appointed for the petitioner, he submitted an amended petition on September 24, 2002.  Id. at Pet's Ex. H.  The amended petition was also denied.  Id. at Pet's Ex. I. An appeal of that decision was denied on February 11, 2004.  Id. at Pet's Ex. K.

On May 6, 2004, the petitioner filed his first federal habeas petition.  Id. at Pet's Ex. L.  That petition was denied by this court on September 28, 2005.  Id. at Pet's Ex. N.  The Court granted the petitioner a Certificate of Appealability and he appealed to the Fourth Circuit.  Id. at Pet's Ex. O.  On April 7, 2008, the Fourth Circuit held that the petitioner's "confrontation right was indisputably contravened . . . by the state circuit court's application of a *per se* rule restricting cross-examination of the prosecution's expert under the state rape shield law."  Barbe v. McBride, 521 F.3d 443 (4th Cir. 2008).  Accordingly, the petitioner was afforded habeas relief as to his six convictions relating

---

[1]Specifically, the petitioner was sentenced to consecutive sentences of 15 to 35 years on Counts 2 and 3; 5 to 15 years on Counts 5 and 6; 10 to 20 years on Counts 8 and 9; and 10 to 25 years on Counts 10 and 11.  Barbe v. McBride, 5:04cv53 at Resp't Ex. 3.

to J.M (Counts 2-3, 5-6 and 8-9).  Id.  Thus, the only convictions remaining are Counts 10 and 11 of the indictment which pertain to the alleged victim B.H.

In the Order denying the petitioner's first federal habeas petition, this court also noted that the petitioner's objections to the R&R contained Ex Post Facto Claims which were not exhausted. [Doc. 7], Pet's Ex. N at 32-33.  Thus, the Court dismissed those claims without prejudice for that reason.  Id.  As a result, the petitioner promptly filed a second state habeas petition to exhaust his Ex Post Facto claim.  Id. at Pet's Ex. P.  The petitioner's second state habeas petition was denied on March 21, 2006, and his appeal was denied on December 6, 2006.  Id. at Pet's Ex. Q-R. This action followed.

### III.   Contentions of the Parties

The parties appear to agree that there are two claims at issue in the instant case:

(1) whether the petitioner's *ex post facto* rights were violated when the sentencing court sentenced him under the 1991 version of W.Va. Code 61-8B-4 on counts 10 and 11; and

(2) whether his due process rights were violated on those same two counts when the court charged the jury on "sexual intrusion," rather than "sexual intercourse" as stated in the indictment.

### A.   The Petition

#### 1.   Ex Post Facto Claim

In the petition, the petitioner asserts that the sentencing court violated the Ex Post Facto Clause of the United States Constitution when it failed to sentence him under the statute in force at the time of the commission of the offenses.  The petitioner claims that the trial testimony reveals that the two incidents alleged with B.H. occurred in 1989 or 1990.  However, he was sentenced pursuant to a statute that was enacted in 1991.  Because the 1991 statute imposed penalties greater than that in effect in 1989 and 1990, the petitioner asserts that this was a clear *ex post facto* violation.

2.  Broadening of the Indictment

In the petition, the petitioner asserts that the State is obligated "to prove the essential elements alleged in the indictment returned by the grand jury."  Petition at 21.  He further asserts that in this case, the indictment charged that the defendant engaged in "sexual intercourse" with B.H while she was "physically helpless."  Id. at 21-22.  Thus, the petitioner asserts that in order to be found guilty of the charge, the State had to prove that he engaged in "sexual intercourse" with B.H. and that she was "physically helpless" at the time.  Id.  The petitioner asserts, however, that under the relevant statutory definitions, the evidence showed neither that "sexual intercourse" took place nor that B.H. was "physically helpless."  Id.  Accordingly, the jury instructions, which defined sexual intrusion and forcible compulsion rather than sexual intercourse and physical helplessness, impermissibly broadened the indictment.  Id. at 21-23 (quoting Stirone v. United States, 361 U.S. 212, 217 (1960) ("After an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself.").

**B.   The Respondent's Response and Motion for Partial Summary Judgment**

In his response to the petition, the respondent generally denies that any violation of the petitioner's rights has occurred.  The respondent further concedes that the petition was timely filed and that the petitioner appears to have colorably exhausted his state remedies.

In his motion for partial summary judgment, the respondent recognizes that the petitioner asserts only one specific ground for relief, to wit:

> Petitioner was denied his right to due process of law as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. and the Ex Post Facto Clause of the U.S. Constitution, Art. I, Section 10, when Petitioner did not receive the punishment prescribed by statute in force at the time of the commission of the offense.

Resp't Memorandum [Doc. 30] at 3.  However, the respondent concedes that within that one ground,

the petitioner actually alleges several separate grounds for relief. The respondent identifies those grounds as:

(1) Ground A - grounds for relief related to J.M. and S.S.;

(2) Ground B - defective indictment; and

(3) Ground C - Ex Post Facto Clause.

Id. at 10-12.

With that in mind, the respondent asserts that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law on Grounds A & B for the following reasons:

(1) the petition asserts claims that are not cognizable in federal habeas corpus;

(2) the petitioner has failed to state a claim upon which relief can be granted; and

(3) the petitioner has failed to demonstrate that he is entitled to relief on those grounds.

Resp't Motion [Doc. 29] at 1. As to Ground C, the respondent concedes that the petitioner is entitled to resentencing on counts 10 and 11 due to an *ex post facto* violation. Resp't Memorandum at 13-14.

## C.    The Petitioner's Response to Respondent's Motion for Partial Summary Judgment

In his response, the petitioner concedes that the only counts of the indictment remaining for the Court's determination are counts 10 and 11. Pet's Response [Doc. 36] at 1. Because the respondent has conceded the petitioner's *ex post facto* allegation, the petitioner requests resentencing on that issue. Id. at 1-2.

As to his claim that the state court impermissibly broadened the charged offense, the petitioner asserts that his indictment charges that he committed the offense of sexual assault in the second degree by feloniously engaging in "sexual intercourse" with B.H. without her consent. Id. at 3. He then asserts that the prosecution failed to produce proof of sexual intercourse at trial. Id.

However, rather than seek an amended indictment, the court instructed the jury that the petitioner could be found guilty of sexual assault in the second degree if it found that he engaged in sexual intrusion with B.H. without her consent. Id. The petitioner asserts that there was a variance between the charge in the indictment and the instructions given to the jury, which impermissibly lowered the State's burden of proof. Id. at 4.

## D.    The Respondent's Supplemental Memorandum

In his supplemental memorandum, the respondent asserts that the petitioner's Stirone claim is unexhausted. Resp't Suppl. Memo. [Dckt. 39] at 2. The respondent contends that neither the petitioner's state habeas petition nor his habeas appeal mention the Stirone case or allege that the State improperly broadened the scope of his indictment. Id. In fact, the respondent argues that the petitioner never even raises this issue until he filed his response to the respondent's motion for partial summary judgment. Id. at 3. Because, in his opinion, the respondent believes that the State court has not had a meaningful opportunity to consider this allegation of error, the respondent asserts that this ground is unexhausted. Id.

Next, the respondent asserts that even if this Court determines that the petitioner's Stirone claim is exhausted, such a claim is not cognizable on habeas review pursuant to the Supreme Court's decision in Hurtado v. California, 110 U.S. 516 (1884). Id. The respondent asserts that the petitioner's claim is actually that his indictment was constructively amended by the jury instructions. However, the respondent contends that although in United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999), the Fourth Circuit Court of Appeals held that constructive amendments violate the grand jury clause of the Fifth Amendment, the Supreme Court has held that the due process clause of the Fourteenth Amendment as applied to the states does not incorporate the Fifth Amendment right to be charged by a grand jury indictment. Id. at 4-5. The respondent further argues that because the

Fifth Amendment right to a grand jury indictment does not apply to state criminal prosecutions, the legality of an amendment to an indictment is primarily a matter of state law. Id. at 5.

Moreover, the respondent contends that Stirone and Cotton, the cases cited by the petitioner in support of his claim, lack precedential value in federal habeas. Id. (citing Ashford v. Edwards, 780 F.2d 405 (4th Cir. 1985) ( finding that "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis for federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process"). Furthermore, the respondent asserts that in West Virginia, an indictment is sufficient so long as it "substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." Id. at 5-6 (quoting Syl. Pt. 3, State v. Hall, 172 W.Va. 138, 140-141, 304 S.E.2d 43, 45 (1983)). Because the petitioner was convicted of second degree sexual assault by means of an indictment that set forth the statute down to the appropriate subsection, the respondent asserts that the petitioner is entitled to no relief on this claim. Id. at 6.

Finally, the respondent asserts that because W.Va. Code § 61-8B-4(a)(2) sets forth alternate ways of committing the same offense and not two separate offenses, the evidence of sexual intrusion constituted a mere variance and not a constructive amendment. Id. In support of this argument, the respondent quotes:

> not all differences between an indictment and the proof offered at trial, rise to the 'fatal' level of a constructive amendment. Where different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs. A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to danger of a second prosecution for the same offense.

Id. (quoting United States v. Randall, 171 F.3d at 203). Because the petitioner here was charged

with second degree sexual assault, which can be proved if he engaged in either sexual intercourse or sexual intrusion with B.H., alternate methods of proving the same crime, the respondent contends there was no unfair surprise or disregard for the petitioner's rights. Id. at 7-8. Simply put, the respondent asserts that the trial court did not broaden the indictment to include a charge not returned by the grand jury. Id. at 8. Thus, the respondent contends that this ground is without merit and should be dismissed. Id. at 9.

**E.    The Petitioner's Response to the Respondent's Supplemental Memorandum**

In his response, the petitioner asserts that his due process claim is exhausted. Pet's Suppl. Resp. [Dckt. 42] at 3. In fact, he notes that he first raised this issue with the Supreme Court of Appeals as far back as the appeal of his first state habeas petition. Id. The petitioner further asserts that he raised this issue in this case several times prior to his response to the respondent's motion. Id. at 3-4. Thus, the petitioner asserts that his claim has been properly raised and should not be dismissed for the failure to exhaust.

As to the substance of his claim, the petitioner asserts that the respondent has misstated the law. Id. at 4. He asserts that the federal standard for determining a due process violation is substantially different than the State standard. Id. Thus, regardless of the State's constitutional requirements, on federal habeas, a state court indictment must satisfy federal due process requirements. Id. The petitioner asserts that it does so only when it "1) contains the elements of the crime so as to permit the accused to plead and prepare an adequate defense, and 2) allows the disposition to be used as a bar in a subsequent prosecution." Id. (citing Russell v. United States, 369 U.S. 749, 763-64 (1962)). The petitioner asserts that the indictment in this case fails on both grounds and he is therefore entitled to relief. Id. at 5.

The petitioner next asserts that amending the charge from "sexual intercourse" to "sexual

intrusion" was a constructive amendment to the charge, and not a mere variance as the respondent contends. Id. Noting the difference between a variance and a constructive amendment, the petitioner argues that the state court erred in this case and constructively amended his indictment because its instructions changed the material facts charged in the indictment. Id. at 6. Because the State failed to present evidence of a material element of the charge -- sexual intercourse -- the petitioner argues that the state court constructively amended the charges against him. Id. at 7-8.

## IV. Standards of Review

### A. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." <u>Felty v. Graves-Humphreys Co.</u>, 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather then encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-588 (1986).

**B.  Federal Habeas Review Under 28 U.S.C. § 2254**

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the

merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently that this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption

'by clear and convincing evidence.'" <u>Tucker v. Ozmint</u>, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993); <u>Richmond v. Polk</u>, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, <u>supra</u>.

## V. <u>Analysis</u>

### A. <u>Petitioners' Ex Post Facto Claim</u>

Article I, § 10, of the Federal Constitution provides that "[n]o States shall . . . pass any . . . ex post facto law." The central concerns of this provision are "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." <u>Weaver v. Graham</u>, 450 U.S. 24, 30 (1981). "To fall within the *ex post facto* prohibition, a law must be retrospective - - that is, it must apply to events occurring before its enactment - - and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." <u>Lynce v. Mathis</u>, 519 U.S. 433, 441 (1997) (internal citations and quotations omitted).

In this case, the petitioner contends that the testimony at trial established that the incidents giving rise to counts 10 and 11 of the indictment occurred in 1989 or 1990. However, he was sentenced pursuant to the 1991 version of the charging statute, which increased the maximum sentence from 20 years to 25 years. Thus, the petitioner asserts that his sentences of 10-25 years on counts 10 and 11 violate the Ex Post Facto Clause of the United States Constitution.

The respondent in this case concedes that the testimony at trial established that the alleged events occurred prior to 1991. The respondent also concedes that the petitioner was sentenced pursuant to the 1991 version of the statute. The respondent further concedes that the 1991 version of the statute increased the maximum penalty to 25 years. Thus, the respondent concedes that a violation of the Ex Post Facto Clause occurred in this case and that the petitioner is entitled to relief on this claim.

As to counts 10 and 11,[2] the indictment charged that "sometime between 1988 and 1994," the petitioner committed the offense of Sexual Assault in the Second Degree against B.H, in violation of W.Va. Code § 61-8B-4(a)(2). [Doc. 7] at Pet's Ex. A. Under the 1984 version of § 61-8B-4(a)(2), the penalty for violating this provision of the West Virginia Code was imprisonment "in the penitentiary not less than ten nor more than twenty years." See [Doc. 37]. In 1991, the legislature amended § 61-8B-4(a)(2) to change the penalty provision to no less than ten nor more than twenty-five years. See Doc. 30 at 14. At sentencing, the petitioner was sentenced to 10-25 years on Counts 10 and 11. See Barbe v. McBride, 5:04cv53 at Resp't Ex. 3.

The petitioner's trial occurred in December of 1999. Barbe v. McBride, 5:04cv53 at Resp't Ex. 2. At that time, B.H. testified that she was 19 years old. Doc. 7, Pet's Ex. V (excerpts of Petitioner's Trial Transcripts) at 3.[3] She further testified that she could only clearly remember two instances of sexual abuse. Id. at 10. Moreover, B.H. testified that these two instances occurred

---

[2] Given the petitioner's acquittal on counts 1, 4, 7, 12-17, and the subsequent vacation of his convictions on counts 2-3, 5-6 and 8-9 by the Fourth Circuit Court of Appeals, the undersigned finds that the only counts remaining at issue in this case are counts 10 and 11.

[3] B.H. testified that she was born on March 12, 1980. Pet's Ex. V at 3.

when she was either nine or ten years old.[4]  Id. at 14, 17.  There was no other evidence regarding when the alleged sexual assaults took place.  Therefore, given B.H.'s date of birth, and the date of the trial, the testimony thus established that the alleged assaults had to have occurred in 1989 or 1990.  Thus, the 1984 version of W.Va. Code § 61-8B-4(a)(2) was in effect at the time the alleged assaults occurred.

Petitioner, however, was sentenced pursuant to the 1991 version of W.Va. Code § 61-8B-4(a)(2).  That version of the statute increased the maximum penalty for the crime from 20 to 25 years imprisonment.  Accordingly, the petitioner's sentences on counts 10 and 11 of the indictment clearly violate the Ex Post Facto Clause of the United States Constitution and the petitioner is entitled to relief on this ground.

**B.   Broadening of the Indictment Claim**

1.   Exhaustion of State Court Remedies

A petition for a writ of habeas corpus is not a substitute for pursuing state judicial remedies.  See 28 U.S.C. §2254(b).  Absent a valid excuse, a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies.  Castille v. Peoples, 489 U.S. 346, 349, *reh'g denied*, 490 U.S. 1076 (1989).  To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court.  Matthews v. Evatt, 105 F.3d 907 (4th Cir.), cert. denied, 522 U.S. 833 (1997).  "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim.  The ground relied upon must be presented face-up and squarely;  the federal question must be plainly defined."

---

[4]B.H. first testified that she was nine years old (1989) when the alleged assaults took place.  Pet's Ex. V at 14.  On cross-examination, she later asserted that the assaults took place "nine years ago (1990)."  Id. at Ex. 17.

Id. at 911. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32 (2004); see also Howell v. Mississippi, 543 U.S. 440, 444 (2005).

In West Virginia, the exhaustion of state remedies is accomplished by a petitioner raising the federal issue on direct appeal from his conviction or in a post-conviction state habeas corpus proceeding followed by an appeal to the West Virginia Supreme Court of Appeals. See Moore v. Kirby, 879 F. Supp. 592, 593 (S.D. W.Va. 1995); see also Bayerle v. Godwin, 825 F. Supp. 113, 114 (N.D.W.Va. 1993). A federal court may only consider those issues the petitioner presented to the state court,[5] and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

In addition, it is the petitioner's burden to demonstrate that he has exhausted his state judicial remedies. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.), cert. denied, 523 U.S. 371 (1998). "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Id. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state

[5]Picard v. Connor, 404 U.S. 270 (1971).

court." Duncan v. Henry, 513 U.S. 364, 365 (1995). Further, in addition to providing the state court with the facts supporting the claimed constitutional violation, the petitioner must also "explain how those alleged events establish a violation of his constitutional rights." Mallory v. Smith, 27 F. 3d 991, 994 (4th Cir. 1994).

In his first state habeas proceeding, the petitioner alleged as his eighth claim for relief in his amended habeas petition that, "[t]he Court committed error when it permitted the State to materially amend the indictment." [Doc. 7], Pet's Ex. H at 7. Later, in his appeal of that proceeding, the petitioner alleged that "the state did not present any evidence of sexual intercourse, an essential element alleged in the indictment." Resp't Ex. 3 at 28. Moreover, he alleged that the state was confined to the "four corners of the indictment returned by the Grand Jury." Id.

In his second state habeas proceeding, the petitioner alleged exactly the same claim that he alleges in the instant case, to wit:

> Petitioner was denied his right to due process of law as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article III, Section 10 of the WV Constitution and the Ex Post Facto Clause of the U.S. Constitution, Art. 1, § 10, and Art. III, § 4, of the WV Constitution when petitioner did not receive the punishment prescribed by statute in force at the time of the commission of the offenses.

[Doc. 7], Pet's Ex. P at 12(A). Moreover, like the instant case, in support of his second state habeas petition, the petitioner argued that there was an "obvious conflict between the express language of the indictment and statutory provision invoked . . ." Id. at 10. In denying the petitioner's second state habeas petition, the state court found that the "contentions relied upon in the Petition have been previously and finally adjudicated." Id. at Pet's Ex. Q. Thus, it appears that this claim, however inartfully pleaded, has been raised in state court. Because the state court has had the opportunity

to address this issue, it is exhausted.[6]

    2.   <u>Merits of the Claim</u>

Count 10 of the petitioner's indictment reads as follows:

> That sometime between 1988 and 1994 in Ohio County, West Virginia, DONALD R. BARBE committed the offense of "Sexual Assault in the Second Degree" in that he unlawfully and feloniously engaged in *sexual intercourse* with B.H., a minor, a person known to the Grand Jury without that person's consent, and the lack of consent resulted from *forcible compulsion*, against the peace and dignity of the State and in violation of West Virginia Code § 61-8B-4(a)(2).

[Doc. 7] at Pet's Ex. A (emphasis added).

Count 11 of the petitioner's indictment reads as follows:

> That sometime between 1989 and 1993 and separate from the incident alleged in Count Ten, in Ohio County, West Virginia, DONALD R. BARBE committed the offense of "Sexual Assault in the Second Degree" in that he unlawfully and feloniously engaged in *sexual intercourse* with B.H., a person known to the Grand Jury without that person's consent, and the lack of consent resulted from *forcible compulsion*, against the peace and dignity of the State and in violation of West Virginia Code § 61-8B-4(a)(2).

*Id.* (emphasis added).

However, at trial, the alleged victim testified to the following events:

A. One time, he was taking me home after a 4-H event and he told -- me I was sitting on the front seat with him in his vehicle, and he asked me to lay down or told me to lay down, one or the other. I laid down and had my head in his lap, and, he put his hand down the front of my pants and started massaging my vagina, and --

---

[6]The Court also notes that the respondent's contention that the petitioner did not raise this claim in this proceeding until he filed his response to the respondent's motion for summary judgment is inaccurate. In the petition, the petitioner states: "[p]ursuant to Count 10 and Count 11 of the indictment returned by the Grand Jury . . . the State obligated itself to prove the defendant engaged in sexual intercourse with B.E.H." Petition at 21. Moreover, the petitioner specifically cites <u>Ex Parte Bain</u>, 121 U.S. 1 (1887) and <u>Stirone</u> as the basis for his claim. <u>Id.</u> In doing so, the petitioner states, "[a]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." <u>Id.</u> Thus, this claim was clearly presented upon initiation of this case.

Q.  So --

A.  -- he would say, "Isn't that more comfortable?"

Q.  Did you try to move away from that position?

A.  In another instance yes.  He laid me down in that same position, but I tried to get back up, and he just pushed me back down with his arm and kept my body laid down flat.

Q.  Now, on this other occasion you are speaking of, what did Mr. Barbe do?

A.  He held my head down in his lap and put his hand down the front of my pants and massaged my vagina.

Q.  With his hand?

A.  With his hand.

Q.  And his fingers?

A.  Yes.

Q.  And what did his fingers do when they were massaging your vagina?

A.  He was moving his fingers around.  I don't know exactly what you're asking me, I'm sorry.

Q.  During the time that he was -- he had his hand down your pants --

A.  Uh-huh.

Q.  -- and massaging your vagina, was there penetration to any degree of the outside area of your vagina?

A.  Yes.

See Id., Pet's Ex. V at 7-8.

In instructing the jury on count ten, the trial court stated:

> The offense charged in Count Ten of the indictment in this case is sexual assault in the second degree.  One of two verdicts may be returned by you under this count of the indictment.  And they are guilty and not guilty.
> Sexual assault in the second degree is committed when any person

engages in sexual intrusion with another person without the consent of the other person and the lack of consent results from forcible compulsion.

Lack of consent results from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or physically helpless.

Forcible compulsion means a physical force that overcomes such earnest resistance as might reasonable be expected under the circumstances, be it threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person, or in fear that he or another person will be kidnapped or seized, fear by a child under 16 years of age caused by intimidation, expressed or implied by another person four years older than the victim. For purposes of this definition, resistance includes physical resistance or any clear communication of the victim's lack of consent.

Before the defendant, Donald R. Barbe, can be convicted of sexual assault in the second degree, the State of West Virginia must overcome the presumption that the defendant, Donald R. Barbe, is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that the defendant, Donald R. Barbe, in Ohio County, West Virginia, between 1988 and 1994, did engage in sexual intrusion with another person, BH, without the consent of BH, which lack of consent results from forcible compulsion.

If, after impartially considering, weighing and comparing all of the evidence, both that of the State and that of the defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of sexual assault in the second degree, you may find Donald R. Barbe guilty of sexual assault in the second degree as charged in Count Ten of the indictment.

If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of sexual assault in the second degree, you shall find the defendant, Donald R. Barbe, not guilty.

See 5:04cv53 [Doc. 14] Ex. 8 (Pet's Trial Transcripts) at 604-606. The instructions for count eleven are substantially the same. Id.

Here, the petitioner alleges that because the indictment specifically charges that the Second Degree Sexual Assault was the result of sexual intercourse, the State should have sought an amendment to the indictment when it became clear that there was no satisfactory proof of sexual intercourse. [Doc. 36] at 3. Instead, the trial court instructed the jury on an element of the crime of

Second Degree Sexual Assault -- sexual intrusion -- which was not charged in the indictment. Id. The petitioner asserts that the State was not permitted to broaden his indictment in such a manner and cites to Stirone v. United States, *supra*, in support of this claim. Id. at 3-4.

In Stirone, the Supreme Court held that a constructive amendment to an indictment violated a defendant's Fifth Amendment right under the grand jury clause. 361 U.S. at 215-16; see also United States v. Randall, 171 F.3d at 203. Thus, the finding in Stirone is clearly grounded in the Fifth Amendment's right to a grand jury. However, the Fifth Amendment's grand jury clause has never been extended to the states. See Alexander v. Louisiana, 405 U.S. 625, 633 (1972); Hurtado v. California, 110 U.S. at 538 (1884). Therefore, neither Stirone nor the Fifth Amendment right to a grand jury is applicable in this case. See Alexander at 633; Ashford v. Edwards, 780 F.2d at 407; United States ex rel. Wojtycha v. Hopkins, 517 F.2d 420, 425 (3d Cir. 1975); Blakeney v. Lee, 2007 WL 1341456 * 46-48 (W.D.N.C. May 3, 2007).

Nonetheless, "[t]he validity of an indictment is subject to measurement against general fourteenth amendment guarantees of due process." Ballard v. Bengston, 702 F.2d 656 (7th Cir. 1983). The due process clause of the Fourteenth Amendment guarantees a criminal defendant a fair trial. Alexander v. Louisiana, 405 U.S. at 1226. In other words, a criminal defendant is entitled to receive "notice of the specific charge, and a chance to be heard in a trial of the issues raised in the charge." Cole v. Arkansas, 333 U.S. 196, 201 (1948). Such notice must be "reasonable." Id.; see also *In re Oliver*, 333 U.S. 257 (1948) (a defendant's right to *reasonable* notice of the charge against him is applied to the states through the Fourteenth Amendment).

"Since a state is constitutionally free to dispense with the grand jury indictment altogether . . . the legality of an amendment to an indictment is primarily a matter of state law." Wojtycha, 517

F.2d at 425 (citing <u>Beck v. Washington</u>, 369 U.S. 541, 545 (1962)).  In West Virginia, "[a]n indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based."  Syl. Pt. 3, <u>State v. Hall</u>, 172 W.Va. 138, 140-141, 304 S.E.2d 43, 45 (1983).

In this case, the petitioner was charged with Second Degree Sexual Assault under West Virginia Code § 61-8B-4(a)(2).  Section 61-8B-4(a)(2) states:

(a) A person is guilty of sexual assault in the second degree when:

(1) Such person engages in sexual intercourse *or* sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion; *or*

(2) Such person engages in sexual intercourse *or* sexual intrusion with another person who is physically helpless.

(Emphasis added).  The jury instructions charged that "[s]exual assault in the second degree is committed when any person engages in sexual intrusion with another person without the consent of the other person and the lack of consent results from forcible compulsion.  Lack of consent results from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or physically helpless."  Pet's Trial Transcripts at 604.  However, the petitioner's indictment specifically charged that the alleged second degree sexual assault was a result of sexual intercourse and forcible compulsion.  [Doc. 7] at Pet's Ex. A.  Although the jury instructions comport with the language of the statute, there is a clear difference between the specific language of the indictment and the jury charge.   The question then becomes whether this difference rises to the level of a constitutional violation.

"A variance occurs when the facts proven at trial support a finding that the defendant committed the indicted crime, but the circumstances alleged in the indictment to have formed the context of the defendant's actions differ in some way nonessential to the conclusion that the crime must have been committed." United States v. Floresca, 38 F.3d 706, 709 (4th Cir. 1994). In this case, the testimony of the alleged victim as cited herein, was sufficient to prove that a sexual intrusion[7] occurred by means of forcible compulsion.[8] Thus, the testimony at trial clearly supports a finding that the defendant committed the indicted crime of Second Degree Sexual Assault.[9] The indictment, however, specifically charged that the defendant committed the indicted crime of Second Degree Sexual Assault by way of sexual intercourse. Thus, there was a clear variance between the facts proved at trial and the circumstances alleged in the indictment. However, not all variances are violative of the Constitution. United States v. Randall, 171 F.3d at 203.

"When different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs. A mere variance does not violate a defendant's

---

[7] Pursuant to W.Va. Code § 61-8B-1 (8), sexual intrusion is defined as "any act between persons involving penetration, however slight, of the female sex organ or of the anus of any person by an object for the purpose of degrading or humiliating the person so penetrated or for gratifying the sexual desire of either party."

[8] Pursuant to W.Va. Code § 61-8B-1 (1), forcible compulsion is defined as:
(a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or
(b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or herself or another person or in fear that he or she or another person will be kidnapped; or
(c) Fear by a person under sixteen years of age caused by intimidation, expressed on implied, by another person who is at least four years older than the victim.

[9] Jackson v. Virginia, 443 U.S. 307, 319 (1979) (when reviewing a claim of the sufficiency of the evidence in federal habeas review, the district court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).

constitutional rights unless it prejudices the defendant by surprising him at trial or hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." Id. Under West Virginia law, Second Degree Sexual Assault may be proven through either proof of sexual intercourse or proof of sexual intrusion. W.Va. Code § 61-8B-4(a)(2). The indictment charged the petitioner with Second Degree Sexual Assault and he was convicted of Second Degree Sexual Assault. Therefore, because the evidence at trial did not alter the underlying crime charged a mere variance occurred in this case. Thus, the petitioner's constitutional rights were not violated unless he can show that he was prejudiced by that variance. To make such a showing, the petitioner must show that he was surprised at trial, that the preparation of his defense was hindered, or that he is now exposed to the danger of a second prosecution for the same offense.

Upon a thorough review of the record, the undersigned finds that the variance in this case did not prejudice the defendant.[10] Although the indictment specifically charged that the petitioner had sexual intercourse with B.H., he was aware that the charge against him was Second Degree Sexual Assault. The statute at that time clearly stated that such charge could be proved by either a showing of sexual intercourse or sexual intrusion. The petitioner therefore had reasonable notice that he could be proven guilty under either theory of the crime. For that same reason, the petitioner cannot show that his defense was hindered by the variance, nor does he appear to make that argument.[11] Finally, the petitioner has been convicted of the crime of Second Degree Sexual Assault for the two incidents specifically alleged in counts 10 and 11 of the indictment. These are not

---

[10]The undersigned notes that counsel did not object to the trial court's instructions.

[11]The petitioner's theory of defense was that the alleged victim fabricated the allegations. Thus, his defense was the same whether he was specifically indicted for Second Degree Sexual Assault by means of sexual intercourse or sexual intrusion.

separate crimes, but alternative methods of proving the same crime. Thus, the petitioner is in no danger of being exposed to a second prosecution for this same offense. Accordingly, the petitioner's claim that his due process rights were violated as to counts 10 and 11 of the indictment when the court charged the jury on "sexual intrusion," rather than "sexual intercourse" as stated in the indictment, is without merit.

## VI.  <u>Recommendation</u>

For the reasons stated, the undersigned recommends that the petitioner's § 2254 habeas petition [Doc. 1] be **GRANTED to the extent** that the petitioner contends that his *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W.Va. Code § 61-8B-4 on counts 10 and 11 of the indictment. The undersigned further recommends that this case be remanded to the state court for resentencing in accordance with this finding.

As to the petitioner's claim that his due process rights were violated as to counts 10 and 11 of the indictment when the court instructed the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the indictment, the undersigned recommends that the Respondent's Motion for Partial Summary Judgment [Doc. 29] be **GRANTED** and that this claim be **DISMISSED with prejudice**.

Within **fourteen (14) days** after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S.

140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record via electronic means.

DATED: July 29, 2010.

      /s/ James E. Seibert                 
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE