**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**DONALD RAYMOND BARBE,**

     **Petitioner,**

     **vs.**                            **Civil Action No. 2:07 CV 25
(Maxwell)**

**THOMAS MCBRIDE, Warden,**

     **Respondent.**


## ORDER ADOPTING REPORT AND RECOMMENDATION

     The above-styled civil action was instituted on March 19, 2007, when the petitioner, Donald Raymond Barbe, who was, at that time[1], proceeding *pro se,* filed a Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus.* This civil action was referred to United States Magistrate Judge James E. Seibert for initial review and report and recommendation, pursuant to Rule 83.13 of the Local Rules of Prisoner Litigation Procedure.

     The docket herein reflects that, by Order entered May 29, 2008, the Court denied and dismissed with prejudice as successive the petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus* and Ordered the above-styled civil action stricken from the docket of this Court. The petitioner appealed the dismissal of his § 2254 Petition to the United States Court of Appeals for the Fourth Circuit by Notice of Appeal filed June 25, 2008, and, in a June 22, 2009, unpublished *per curiam* opinion, the United States Court of Appeals for the Fourth Circuit vacated this Court's May 29, 2008, Order dismissing the

---

[1]Attorney V. Tad Greene, who now represents the petitioner, did not file a Notice of Appearance herein until May 27, 2008 (Doc. 6).

petitioner's § 2254 Petition and remanded this matter for further proceedings.  Accordingly, this matter was re-referred to United States Magistrate Judge James E. Seibert by Order entered December 22, 2009.

By Order entered December 29, 2009, Magistrate Judge Seibert directed the respondent to show cause why the petitioner's § 2254 Petition should not be granted.  In compliance with Magistrate Judge Seibert's December 29, 2009, Order, the Respondent's Motion for Partial Summary Judgment and Memorandum in Support thereof were filed on January 27, 2010.  The Petitioner's Response to Respondent's Motion for Partial Summary Judgment was filed on February 26, 2010.

By Order entered March 26, 2010, Magistrate Judge Seibert indicated that he found the respondent's Motion for Partial Summary Judgment unresponsive to the petitioner's second ground for relief, *i.e.*, that his due process rights were violated when the state court, in its jury instructions, impermissibly broadened the offenses charged in Counts Ten and Eleven of the Indictment.  Accordingly, Magistrate Judge Seibert's March 26, 2010, Order gave the respondent twenty-one days in which to file a supplemental response to the petitioner's § 2254 Petition and to specifically address therein the petitioner's second ground for relief.

The Respondent's Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment was filed on April 16, 2010. The Petitioner's Response to Respondent's Supplemental Memorandum of Law in Supprot [*sic*] of Motion for Partial Summary Judgment was filed on June 7, 2010.

By Report and Recommendation entered July 29, 2010, Magistrate Judge Seibert recommended that the petitioner's § 2254 Petition be granted with regard to his contention that his *ex post facto* rights were violated when the state court sentenced him under the

1991 version of W. Va. Code § 61-8B-4 on Counts Ten and Eleven of the Indictment; that this civil action be remanded to the state court for re-sentencing on Counts Ten and Eleven of the Indictment; and that the respondent's Motion for Partial Summary Judgment be granted with regard to the petitioner's contention that his due process rights were violated as to Counts Ten and Eleven of the Indictment when the state court instructed the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the Indictment.

Magistrate Judge Seibert's Report and Recommendation ("R & R") expressly advised the parties, in accordance with 28 U.S.C. § 636(b)(1), to file with the Clerk of Court any written objections to the Report and Recommendation within fourteen days after being served with a copy of the same. The Report and Recommendation further advised the parties that a failure to timely file objections thereto would result in waiver of the right to appeal from a judgment of this Court based thereon. The Petitioner's Objections to Report and Recommandations [*sic*] were filed on August 30, 2010[2].

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of Magistrate Judge Seibert's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of Magistrate Judge Seibert as to those portions of the findings or recommendation to which no objections are addressed*.  **Thomas v. Arn**, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1);

[2]The petitioner filed a Motion for Extension of Time to File Objections on August 10, 2010, and this Motion was granted by a paperless Order entered by this Court on August 11, 2010. Pursuant to the Court's August 11, 2010, Order, the petitioner was given until August 31, 2010, in which to file objections to Magistrate Judge Seibert's Report and Recommendation.

*Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1980); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). As previously noted, the petitioner timely filed his Objections to Report and Recommandations [*sic*] on August 30, 2010. This Court has conducted a *de novo* review only as to the portions of the R & R to which the petitioner objected. The remaining portions of the R & R to which the petitioner did not object were reviewed for clear error.

As noted by Magistrate Judge Seibert in his R & R, in his § 2254 Petition, the petitioner challenges Counts Ten and Eleven of the Indictment in the underlying state court action on two grounds, first, that his *ex post facto* rights were violated when the sentencing court sentenced him under the 1991 version of West Virginia Code § 61-8B-4; and, second, that his due process rights were violated when the state court impermissibly broadened the offenses charged in Counts Ten and Eleven of the Indictment by instructing the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the Indictment.

## I. The Petitioner's *Ex Post Facto* Rights Were Violated When the Sentencing Court Sentenced Him Under the 1991 Version of West Virginia Code § 61-8B-4

The petitioner argues that his *ex post facto* rights were violated when the sentencing court sentenced him on counts Ten and Eleven of the Indictment using the 1991 version of West Virginia Code § 61-8B-4, when the evidence adduced at trial proved that the two incidents charged in those counts occurred in 1989 or 1990. The 1991 version of West Virginia Code § 61-8B-4 increased the maximum sentence for a conviction of Sexual Abuse in the Second Degree from twenty years to twenty-five years.

As noted by Magistrate Judge Seibert in his R & R, the respondent concedes in his Memorandum of Law in Support of Motion for Partial Summary Judgment that the

sentences imposed on the petitioner with regard to Counts Ten and Eleven of the Indictment did violate the *Ex Post Facto* clause of the United States Constitution. (Doc. 30 at 13). In his R & R, Magistrate Judge Seibert agreed with the respondent and recommended that the petitioner's § 2254 Petition be granted with regard to the petitioner's contention that his *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W. Va. Code § 61-8B-4 on Counts Ten and Eleven of the Indictment and that this civil action be remanded to the state court for re-sentencing. The petitioner has not objected to this recommendation of the Magistrate Judge, and this Court, agreeing with both parties and Magistrate Judge Seibert that the petitioner's *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W. Va. Code § 61-8B-4 on Counts Ten and Eleven of the Indictment, hereby **ADOPTS** Magistrate Judge Seibert's R & R with regard to this issue without any further discussion. The Court will also issue a writ of *habeas corpus*, vacate the sentences imposed on the petitioner with regard to Counts Ten and Eleven of the Indictment, and remand this issue to the state court for re-sentencing.

**II.    The Petitioner's Due Process Rights Were Not Violated When the State Court Instructed the Jury on "Sexual Intrusion" Rather Than "Sexual Intercourse" as Charged in Counts Ten and Eleven of the Indictment**

In his second ground for relief, the petitioner alleges that his due process rights were violated when the state court impermissibly broadened the offenses charged in Counts Ten and Eleven of the Indictment by instructing the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the Indictment. Specifically, the petitioner the notes that

the prosecution failed to produce proof of "sexual intercourse," and that it should have returned the Indictment to the grand jury to seek an amendment to Counts Ten and Eleven thereof. The petitioner contends, however, that what occurred, instead, was that the state court charged the jury on "sexual intrusion" and, thus, amended the charges that had been made in Counts Ten and Eleven of the Indictment. The petitioner argues that the state court's action in this regard constituted a constructive amendment of the charges set forth in Counts Ten and Eleven of the Indictment which is violative of the ruling of the United States Supreme Court in **Stirone v. United States**, 361 U.S. 212, 215-216 (1960), wherein the Court held that a constructive amendment to an Indictment violated a defendant's Fifth Amendment right under the grand jury clause.

In its Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment, the respondent argues first that the petitioner's **Stirone** claim was unexhausted since neither the petitioner's state *habeas* petition nor his *habeas* appeal to the West Virginia Supreme Court of Appeals mentioned the **Stirone** case or alleged that the State had improperly broadened the scope of his Indictment. In this regard, the respondent contends that the petitioner did not raise his **Stirone** claim until his Response to Respondent's Motion for Partial Summary Judgment.

The second argument made by the respondent in its Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment is that, even were the Court to find that the petitioner did exhaust his **Stirone** claim in state court, the claim would not be cognizable on *habeas* review pursuant to the United States Supreme Court's decision in **Hurtado v. California**, 110 U.S. 516, 534-35 (1884), wherein the Supreme Court held that

the due process clause of the Fourteenth Amendment as applied to the states does not incorporate the Fifth Amendment right to be charged by grand jury Indictment.

In its third and final argument with regard to the petitioner's **Stirone** claim, the respondent asserts that, because West Virginia Code § 61-8B-4(a)(2) sets forth alternate ways of committing the same offense and not two separate offenses, the evidence of sexual intrusion constituted a mere variance and not a constructive amendment.  In this regard, the respondent cites the opinion of the United States Court of Appeals for the Fourth Circuit in **United States v. Randall**, wherein the Court held that "[a] mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense."  171 F.3d 195, 203 (1999). The respondent takes the position that, because the petitioner was charged with Second Degree Sexual Assault, which, by statute, can be proved by either sexual intercourse or sexual intrusion, there was no unfair surprise or disregard for the petitioner's rights.

In his Response to the Respondent's Supplemental Memorandum, the petitioner contends that his due process claim is exhausted; that he first raised that issue in his first state *habeas* petition to the West Virginia Supreme Court of Appeals; and that he raised that issue in this Court several times before the filing of his  Response to Respondent's Motion for Partial Summary Judgment.  The petitioner further contends that, regardless of the state's constitutional requirements, in a federal *habeas corpus* action, a state court Indictment must satisfy federal due process requirements.  Relying on the case of **Russell v. United States**, 369 U.S. 749, 763-64 (1962), the petitioner asserts that, in order to

satisfy federal due process requirements, a state court Indictment must contain the elements of the crime so as to permit the accused to plead and prepare an adequate defense and allow the disposition to be used as a bar in a subsequent prosecution, neither of which condition is met with the Indictment in this case. Finally, the petitioner asserts that broadening the charges in Counts Ten and Eleven from "sexual intercourse" to "sexual intrusion" was a constructive amendment to the charge and not a mere variance as suggested by the respondent. In this regard, the petitioner argues that the state court's instructions changed the material facts charged in the Indictment when the State was unable to present evidence of a material element of the offenses charged in Counts Ten and Eleven of the Indictment, namely, sexual intercourse.

In his R & R, Magistrate Judge Seibert found that the petitioner had exhausted his state court remedies with regard to his *Stirone* claim. The Magistrate Judge further found that, neither *Stirone* nor the Fifth Amendment right to a grand jury were applicable to this case. Additionally, Magistrate Judge Seibert found that the state court's charge of "sexual intrusion" rather than "sexual intercourse" as charged in Counts Ten and Eleven of the Indictment amounted to a variance rather than a constructive amendment. Finally, Magistrate Judge Seibert found that the variance in this case did not prejudice the petitioner. In this regard, the Magistrate Judge noted that the petitioner was aware that the charge against him was Second Degree Sexual Assault; that the statute governing Second Degree Sexual Assault clearly stated that such a charge could be proved by either a showing of sexual intercourse or sexual intrusion; and that the petitioner, accordingly, had reasonable notice that he could be proven guilty under either theory of the case. Finally,

Magistrate Judge Seibert found that the petitioner was unable to show that his defense was hindered by the variance since his theory of the defense was that the alleged victim had fabricated the allegations, a theory which would not change regardless of whether he was specifically indicted for Second Degree Sexual Assault by means of sexual intercourse or sexual intrusion, and that petitioner was in no danger of being exposed to a second prosecution for the crime of Second Degree Sexual Assault with regard to the two incidents alleged in Counts Ten and Eleven of the Indictment.

In his Objections to Report And Recommmandations [*sic*], the petitioner objects to various specific sentences from Magistrate Judge Seibert's R & R, which essentially amount to an objection to the entirety of the Magistrate Judge's Recommendation with regard to his *Stirone* claim, with the exception of the Magistrate Judge's determination that he had exhausted the claim on the state court level.   In other words, the petitioner objects to the Magistrate Judge's conclusion that neither *Stirone* nor the Fifth Amendment right to a grand jury are applicable to this case; to the Magistrate Judge's determination that the state court's jury instructions regarding "sexual intrusion" rather than "sexual intercourse," as charged in Counts Ten and Eleven of the Indictment, amounted to a variance rather than a constructive amendment; and to the Magistrate Judge's conclusion that the variance in this case did not prejudice the petitioner.

Count Ten of the state court Indictment in question charged as follows:

> That sometime between 1988 and 1994 in Ohio County, West Virginia, DONALD R. BARBE committed the offense of "Sexual Assault in the Second Degree" in that he unlawfully and feloniously engaged in sexual intercourse with B.H., a minor, a person known to the Grand Jury without that person's consent, and the lack of consent resulted from forcible

compulsion, against the peace and dignity of the State and in violation of West Virginia Code § 61-8B-4(a)(2).

(Doc. 7, Ex. A at 5). Likewise, Count Eleven of the state court Indictment in question charged as follows:

That sometime between 1989 and 1993 and separate from the incident alleged in Count Ten, in Ohio County, West Virginia, DONALD R. BARBE committed the offense of "sexual Assault in the Second Degree" in that he unlawfully and feloniously engaged in sexual intercourse with B.H., a person known to the Grand Jury without that person's consent, and the lack of consent resulted from forcible compulsion, against the peace and dignity of the State and in violation of West Virginia Code § 61-8B-4(a)(2).

(Doc. 7, Ex. A at 6).

During the trial of the underlying criminal action, the alleged victim, B.H., testified to the following events:

A. One time, he was taking me home after a 4-H event and he told – me I was sitting on the front seat with him in his vehicle, and he asked me to lay down or told me to lay down, one or the other. I laid down and had my head in his lap, and, he put his hand down the front of my pants and started massaging my vagina, and –

Q. So –

A. – he would say, "Isn't that more comfortable?"

Q. Did you try to move away from that position?

A. In another instance yes. He laid me down in that same position, but I tried to get back up, and he just pushed me back down with his arm and kept my body laid down flat.

Q. Now, on this other occasion you are speaking of, what did Mr. Barbe do?

A. He held my head down in his lap and put his hand down the front of my pants and massaged my vagina.

10

Q.  With his hand?

A.  With his hand.

Q.  And his fingers?

A.  Yes.

Q.  And what did his fingers do when they were massaging your vagina?

A.  He was moving his fingers around.  I don't know exactly what you're asking me, I'm sorry.

Q.  During the time that he was – he had his hand down your pants –

A.  Uh-huh.

Q.  – and massaging your vagina, was there penetration to any degree of the outside area of your vagina?

A.  Yes.

(Doc. 7,  Ex. V at 7-8).

In charging the jury with regard to Count Ten of the Indictment, the state court stated

as follows:

> The offense charged in Count Ten of the Indictment in this case is sexual assault in the second degree.  One of the two verdicts may be returned by you under this count of the Indictment.  And they are guilty and not guilty.
>
> Sexual assault in the second degree is committed when any person engages in sexual intrusion with another person without the consent of the other person and the lack of consent results from forcible compulsion.
>
> Lack of consent results from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or physically helpless.

Forcible compulsion means a physical force that overcomes such earnest resistance as might reasonable be expected under the circumstances, be it threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person, or in fear that he or another person will be kidnapped or seized, fear by a child under 16 years of age caused by intimidation, expressed or implied by another person four years older than the victim. For purposes of this definition, resistance includes physical resistance or any clear communication of the victim's lack of consent.

Before the defendant, Donald R. Barbe, can be convicted of sexual assault in the second degree, the State of West Virginia must overcome the presumption that the defendant, Donald R. Barbe, is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that the defendant, Donald R. Barbe, in Ohio County, West Virginia, between 1988 and 1994, did engage in sexual intrusion with another person, BH, without the consent of BH, which lack of consent results from forcible compulsion.

If, after impartially considering, weighing and comparing all of the evidence, both that of the State and that of the defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of sexual assault in the second degree, you may find Donald R. Barbe guilty of sexual assault in the second degree as charged in Count Ten of the Indictment.

If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of sexual assault in the second degree, you shall find the defendant, Donald R. Barbe, not guilty.

(Doc. 14 (5:04 CV 53), Ex. 8 at 604-606). The instructions given by the state court with regard to Count Eleven of the Indictment are substantially the same. (Doc. 14 (5:04 CV 53), Ex. 8 at 604-606).

A. **Neither *Stirone* Nor the Fifth Amendment Right to a Grand Jury are Applicable to this Case**

As previously noted, the petitioner contends that, by instructing the jury on "sexual intrusion" rather than "sexual intercourse," as charged in Counts Ten and Eleven of the Indictment, the trial court constructively amended the Indictment and violated his Fifth Amendment right under the grand jury clause. In support of this argument, the petitioner relies on the case of *Stirone v. United States*, 361 U.S. 212 (1960). In his R & R, Magistrate Judge Seibert recognized that, in the *Stirone* case, the Supreme Court did hold that a constructive amendment to an Indictment violates a defendant's Fifth Amendment right under the grand jury clause, but found that, because the holding was clearly grounded in the Fifth Amendment's right to a grand jury, it did not apply to the states and was not, accordingly, applicable to the case now before the Court. This Court agrees.

In the *Stirone* case, the United States Supreme Court held that, once an Indictment has been returned, its charge may not be broadened through amendment except by the grand jury itself. 361 U.S. at 215-16. Referencing the Supreme Court's holding in *Stirone*, the United States Court of Appeals for the Fourth Circuit has held that constructive amendments violate the grand jury clause of the Fifth Amendment to the United States Constitution and has stated as follows in this regard:

> The Fifth Amendment to the United States Constitution, which in relevant part provides: "No person shall be held to answer for a capitol, or otherwise infamous crime, unless on a presentment or Indictment of a Grand Jury. . . ," U.S. Const. amend. V., "'guarantees that a criminal defendant will be tried only on charges in a grand jury Indictment.'" Therefore, only the grand jury may broaden or alter the charges in the Indictment. *See Stirone v. United States*, 361 U.S. 212, 215-216, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

*United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999).

As noted by Magistrate Judge Seibert in his R & R, however, the Fifth Amendment's grand jury clause has never been extended to the states. In this regard, the United States Supreme Court stated:

> Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or Indictment by a grand jury. In *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Court held that because trial by jury in criminal cases under the Sixth Amendment is 'fundamental to the American scheme of justice,' *id.*, at 149, 88 S.Ct., at 1447, such a right was guaranteed to defendants in state courts by the Fourteenth Amendment, but the Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States. *Hurtado v. California*, 110 U.S. 516, 638, 4 S.Ct. 111, 122, 28 L.Ed. 232 (1884).

*Alexander v. Louisiana*, 405 U.S. 625, 633 (1972). Based on the clear holding of the Supreme Court in the *Alexander* case, Magistrate Judge Seibert was correct to conclude that neither the *Stirone* case nor the Fifth Amendment right to a grand jury are applicable in the matter before the Court and that, for that reason, the legality of any amendment to the state court Indictment in question is primarily a matter of state law. Claims based on errors of state law are not cognizable on federal *habeas* review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

B.      **The State Court's Jury Instructions Regarding "Sexual Intrusion" Rather than "Sexual Intercourse," as Charged in Counts Ten and Eleven of the Indictment, Amounted to a Variance Rather than a Constructive Amendment**

The petitioner contends that, by instructing the jury on "sexual intrusion" rather than "sexual intercourse," as charged in Counts Ten and Eleven of the Indictment, the state

14

court constructively amended the charges set forth therein. Accordingly, in his Objections, the petitioner objects to Magistrate Judge Seibert's determination that the state court's jury instructions on "sexual intrusion" amounted to a mere variance, rather than a constructive amendment. This Court agrees with Magistrate Judge Seibert's conclusion.

Magistrate Judge Seibert concluded that the jury instructions given by the state court comported with the language of West Virginia Code § 61-8B-4(a)(2), and this Court agrees. West Virginia Code § 61-8B-4(a), provides as follows:

> (a) A person is guilty of sexual assault in the second degree when:
>
> (1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion; or
>
> (2) Such person engages in sexual intercourse or sexual intrusion with another person who is physically helpless.

The foregoing statute clearly provides two alternative ways to prove Second Degree Sexual Assault – by sexual intercourse or by sexual intrusion. When it instructed the jury on Counts Ten and Eleven of the Indictment, the state court instructed that the jury could find the petitioner guilty of Second Degree Sexual Assault if it found, beyond a reasonable doubt, that the petitioner had engaged in sexual intrusion with B.H., without her consent, and that the lack of consent resulted from forcible compulsion. The state court further instructed that lack of consent resulted "from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or physically helpless." Finally, the state

court instructed that forcible compulsion "means a physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances, be it threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person, or in fear that he or another person will be kidnapped or seized, fear by a child under 16 years of age caused by intimidation, expressed or implied by another person four years older than the victim." (Doc. 14 (5:04 CV 53), Ex. 8 at 604-606). Thus, as Magistrate Judge Seibert found, the state court's instruction on "sexual intrusion" was consistent with what is required to prove Second Degree Sexual Assault in violation of West Virginia Code § 61-8B-4(a)(2). In his Objections, the petitioner points out that West Virginia Code § 61-8B-4(a)(2) requires that the sexual intrusion be with a person who is "physically helpless" and that the state court did not charge the jury with this requirement. This Court notes, however, that the state court did, in fact, instruct the jury that a lack of consent resulted "from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or *physically helpless*." (Doc. 14 (5:04 CV 53), Ex. 8 at 604-606)(emphasis added).

After having reviewed the trial transcript, Magistrate Judge Seibert further concluded that B. H.'s trial testimony was sufficient to prove that a sexual intrusion had occurred by means of forcible compulsion, and, that, accordingly, the trial testimony supported a finding that the petitioner had committed the crime of Second Degree Sexual Assault. This Court agrees. During the underlying trial, the alleged victim, B.H., did not testify to sexual intercourse, but rather to the petitioner having "massaged" her vagina on two separate occasions. (Doc. 7, Ex. V at 7-8). B. H. specifically testified that, on one occasion, the

petitioner's fingers had penetrated the outside area of her vagina. (Doc. 7, Ex. V at 7-8). B. H. further testified that, on the second occasion, she had "tried to get back up, and he just pushed me back down with his arm and kept my body laid down flat." (Doc. 7, Ex. V at 7-8). In his Objections, the petitioner asserts that B. H. only testified to the petitioner's fingers having penetrated the outside area of her vagina on one occasion. Having heard the testimony of B. H., the jury convicted the petitioner of both Counts Ten and Eleven of the Indictment. It is somewhat unclear to this Court to which occasion B.H. was referring when she responded to the prosecution's question regarding whether the petitioner's fingers had ever penetrated the outside area of her vagina. The jury was present for B. H.'s testimony, however, and it found beyond a reasonable doubt that sufficient evidence existed to find the petitioner guilty on each of the two occasions addressed by Counts Ten and Eleven of the Indictment. This Court will not disturb the jury's finding of guilt. The United States Court of Appeals for the Fourth Circuit has stated as follows with regard to the limits placed on a federal court when reviewing claims of insufficient evidence from a state court proceeding:

> Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is "sharply limited." *Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality opinion); *see also Evans-Smith v. Taylor*, 19 F.3d 899, 905 (4th Cir. 1994) ("The standard is obviously rigorous."). Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review. *Wright*, 505 U.S. at 292, 112 S.Ct. 2482. Thus, a defendant is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (footnote omitted); *see also George v. Angelone*, 100 F.3d 353, 357

> (4th Cir. 1996), *cert. denied*, 519 U.S. 1103, 117 S.Ct. 854, 136
> L.Ed.2d 829 (1997).

***Wilson v. Greene***, 155 F.3d 396, 405-406 (1998).  With regard to Counts Ten and Eleven

of the Indictment in the underlying state court action, it simply cannot be the that no rational

trier of fact could find the petitioner guilty of Second Degree Sexual Assault.

As noted by Magistrate Judge Seibert in his R & R, however, there is a clear

difference between the specific language of the Indictment and the evidence presented at

trial.  Magistrate Judge Seibert concluded that this difference amounted to a mere variance,

as opposed to a constructive amendment, and this Court agrees.   As noted above, the

actual language of Counts Ten and Eleven of the Indictment charged, in pertinent part, that

the petitioner had "unlawfully and feloniously engaged in sexual intercourse with B.H., a

minor, a person known to the Grand Jury without that person's consent, and the lack of

consent resulted from forcible compulsion, against the peace and dignity of the State and

in violation of West Virginia Code § 61-8B-4(a)(2).  (Doc. 7, Ex. A at 5-6).  B. H. did not

testify to sexual intercourse, but rather to sexual intrusion.  Thus, the Indictment charged

Second Degree Sexual Assault by sexual intercourse, while the evidence adduced at trial

amounted to Second Degree Sexual Assault by sexual intrusion.    The United States

Court of Appeals for the Fourth Circuit has expressly addressed the difference between a

variance and a constructive amendment of an Indictment.  In this regard, the Fourth Circuit

Court of Appeals has defined a variance as follows:

> A variance occurs when the facts proven at trial support a
> finding that the defendant committed the indicted crime, but the
> circumstances alleged in the Indictment to have formed the
> context of the defendant's actions differ in some way
> nonessential to the conclusion that the crime must have been
> committed.

*United States v. Floresca*, 38 F.3d 706, 709 (1994). In contrast, the Fourth Circuit Court

of Appeals has defined a constructive amendment as follows:

> A constructive amendment to an Indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury.

*Id.* at 710.

Magistrate Judge Seibert concluded that what occurred in the underlying state court

trial amounted to a variance between the facts proven at trial and the circumstances

alleged in the Indictment. This Court agrees. The facts proven at trial do support a finding

that the defendant committed the indicted crime of Second Degree Sexual Assault but that

he committed that crime by means of sexual intrusion. Because West Virginia Code § 61-

8B-4a provides two alternative ways of committing the offense of Second Degree Sexual

Assault, a finding of sexual intercourse is, in this case, nonessential to the conclusion that

the petitioner committed the crime of Second Degree Sexual Assault. By instructing the

jury on sexual intrusion, the trial court did not broaden the possible bases for conviction

beyond those presented by the grand jury. To the contrary, based on the trial court's

instructions, the jury could still only convict the defendant of Second Degree Sexual

Assault.

### C.      The Variance in this Case Did Not Prejudice the Petitioner

After determining that what occurred in the underlying state court trial amounted to

a mere variance between the facts proven at trial and the circumstances alleged in the

Indictment, Magistrate Judge Seibert addressed the issue of whether the variance rose to the level of a constitutional violation. He found that it did not, since the petitioner was not prejudiced by the variance. The petitioner objects to the Magistrate Judge's conclusion that no prejudice occurred.

The United States Court of Appeals for the Fourth Circuit has addressed the issue of when a variance violates the Constitution as follows:

> not all differences between an Indictment and the proof offered at trial, rise to the "fatal" level of a constructive amendment. *See* ***Redd***, 161 F.3d at 795. When different evidence is presented at trial but the evidence does not alter the crime charged in the Indictment, a mere variance occurs. *See* ***id***. A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense. *See* ***id***.

***United States v. Randall***, 171 F.3d 195, 203 (1999). Based on his review of the record, Magistrate Judge Seibert found that the petitioner was not prejudiced by the variance. This Court agrees.

As Magistrate Judge Seibert noted, the petitioner was aware from the inception of the state court criminal action against him that he was charged with the offense of Second Degree Sexual Assault. The charge of Second Degree Sexual Assault never changed, only the method by which it was proven did so, and the West Virginia statute in effect at that time expressly provided that the offense of Second Degree Sexual Assault could be proven by either a showing of sexual intercourse or sexual intrusion. Thus, this Court agrees with Magistrate Judge Seibert that it is impossible for the petitioner to show that his defense was hindered by the variance since he was on notice from the very beginning of

the criminal proceedings against him that the State was attempting to prove that he had committed Second Degree Sexual Assault against B. H., and that the State could do so by either a showing of sexual intercourse or sexual intrusion.

The petitioner asserts in his Objections that it is speculation on the Magistrate Judge's part to say that his theory of defense, namely, that the alleged victim fabricated the allegations, would have remained the same regardless of whether he was indicted for Second Degree Sexual Assault by means of sexual intercourse or sexual intrusion. In this regard, the petitioner contends that "[n]o record exists as to what the Petitioner's defense would have been if he was properly informed of the State's theory of these charges." (Doc. 47 at 7). While the petitioner may be correct that this is, technically, speculation on the part of the Magistrate Judge, it is very hard for this Court to conceive of how the petitioner's defense to charges of Second Degree Sexual Assault by sexual intrusion would have been any different from his defense to charges of Second Degree Sexual Assault by sexual intercourse, when both charges would refer to acts against the very same victim, B.H, on the very same two occasions.

Finally, the petitioner asserts in his Objections that the Magistrate Judge's R & R "does not appear to make a finding as to whether the indictment, as charged, would act to bar the Petitioner from further prosecution." (Doc. 47 at 7). The Court is puzzled by the petitioner's assertion in this regard, insofar as Magistrate Judge Seibert expressly notes the following in his R & R:

> Finally, the petitioner has been convicted of the crime of Second Degree Sexual Assault for the two incidents specifically alleged in counts 10 and 11 of the Indictment. These are not separate crimes, but alternative methods of proving the same crime. Thus, the petitioner is in no danger of

being exposed to a second prosecution for this same offense.

(Doc. 25 at 43). Through the foregoing statement, the Magistrate Judge very clearly held that, because the petitioner was convicted of the crime of Second Degree Sexual Assault for the two incidents alleged in Counts Ten and Eleven of the Indictment, he is in no danger of being exposed to a second prosecution for this same offense.

For all of the foregoing reasons, it is

**ORDERED** that Magistrate Judge Seibert's July 29, 2010, Report and Recommendation (Doc. 43) be, and is hereby, **ORDERED ADOPTED**. Accordingly, it is

**ORDERED** that:

1.     The petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus* (Doc. 1) be, and the same is hereby, **GRANTED** with regard to the petitioner's contention that his *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W. Va. Code § 61-8B-4 on Counts Ten and Eleven of the Indictment;

2.     The respondent's Motion for Partial Summary Judgment (Doc. 29) be, and the same is hereby **GRANTED** with regard to the petitioner's contention that his due process rights were violated as to Counts Ten and Eleven of the Indictment when the state court instructed the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the Indictment.

In light of the Court's determination that the petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus* should be granted with regard to the petitioner's contention that his *ex post facto* rights were violated when the state court sentenced him

under the 1991 version of W. Va. Code § 61-8B-4 on Counts Ten and Eleven of the Indictment, this Court **ISSUES** a writ of *habeas corpus*, **VACATES** the sentences imposed on the petitioner with regard to Counts Ten and Eleven of the Indictment, and **REMANDS** this case to the Circuit Court of Ohio County, West Virginia, for re-sentencing. It is further

**ORDERED** that the above-styled civil action is **DISMISSED** and **RETIRED** from the docket of this Court. It is further

**ORDERED** that, should the petitioner desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within thirty (30) days from the date of the entry of the Judgment Order, pursuant to Rule 4 of the Federal Rules of Appellate Procedure. The $5.00 filing fee for the notice of appeal and the $450.00 docketing fee should also be submitted with the notice of appeal. In the alternative, at the time the notice of appeal is submitted, the petitioner may, in accordance with the provisions of Rule 24(a) of the Federal Rules of Appellate Procedure, seek leave to proceed *in forma pauperis* from the United States Court of Appeals for the Fourth Circuit.

It is so **ORDERED**.

The Clerk of Court is directed to transmit copies of this Order to counsel of record and to the Clerk of Court of the Circuit Court of Ohio County, West Virginia.

**DATED**: September 15, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE